Gúria, per

Harper, Ch.,
There are some facts, connected with the proceedings in the cause which were not brought to (he view of the court below.
It appears that, after the filing of the petition of Complainant to be re-impursed the expenses of the buildings, a suit, for partition of the estate of Samuel Miller, was brought by Ann E. Thompson against the Complainant and the other defendants to the present suit. A writ of partition was ordered, and the commissioner recommended a sale of the real estate. In June, 1834-, a sale was made, and the house and lot in question was bid off by the present defendants, at the price of $3,450, who gave their bond to the master, with a mortgage of the premises, to secure the purchase money. In May, 1835, an order was made by Chancellor DeSaussure, *69 that the proceeds of the sale of the house and lot then in the hands of tire master of this court, should remain with him subject to the future order of this court. Some years after the sale, the house, in'the possession of the defendants, was consumed by fire. The decree of the Appeal Court, of 1835, determined that the Complainant was entitled to be re-imburs-ed the expenses of the improvements, so far they added to the present value of the estate, and that decree is conclusive upon .the parties and upon the court.
The decree still seems to us to be stifficiently supported by authorities, and founded upon the plainest principles of equity. At that time, the defendants were suing at- law to •recover possession of the property. By resisting the Complainant’s demand, their claim was to put into their own pockets so much of the Complainant’s money, as the improvements added to the value of the lot; thus gaining an inequitable advantage against which the courts of law would afford no remedy. .
There are cases in which an executor would be allowed the entire amount of his expenditures in improvements, although, from some unforeseen cause, they should turn out to be of little or no value. As, in the case put, of his having money in his hands, and real estate entirely unproductive. If, to all human reason, they were judicious and advantageous to the estate at the time, there is no reason why he should bear the loss, although, from unforseen casuality, they should afterwards become deteriorated in value. But perhaps it is proper that, when the executor borrows or advances money for the purpose of making the improvements, and this has been done without the previous sanction of the court, the court should do what has been done in this case, and restrict his re-imbursements to the amount which the improvements added to the actual value of the property, at the time the Legatee is entitled to possession. Otherwise, the objection *70 might be made, that the Legatees might be brought in debt beyond the value of the estate they receive. Yet this is but hard measure to a Trustee, who has acted judiciously and faithfully, where the devisee takes from his ancestor or testator, an estate which, altogether, is much more than sufficient to re-imburse him. But, when he is restricted to the actual value, it should seem impossible that the objection could apply. If the entire value of the property, and the relativé value of the land and of the ■ improvements, be truly fixed, there is nothing to do, but to sell the property and to divide the proceeds according to the rights of the parties.
It is urged that the estimate of witnesses is an imperfect method of fixing the valuation of property. It might be said, that if the evidence of value on one side is imperfect, it is the business of the other party to produce .the proper evidence. In some cases, however, it might be proper to bring the matter to the test of experiment, to direct a sale, and then to divide the proceeds according to the best .evidence of the relative value. The Court cannot do so nota, in this case. The property has been sold, and bid off by the defendants, at a price within a trifle of the value fixed by the witnesses. This strongly confirms the judgment of the witnesses. I must suppose that they bid so much more on account of the improvements. Is it not plain then, if they are allowed to keep the entire property and pay nothing, they put into their pockets so much money of the complainant, to which they have no shadow of a claim 1 But the house has been burnt down. But it was burnt after the entire property had become theirs, not only by the will of the testator, but by their own voluntary act. Men must bear their own misfortunes. If there was any neglect, in failing to insure, it was that of the defendants. It vvoidd be as reasonable, if they had purchased the property of another, to claim to be relieved, from the payment of their bond, on the ground that *71 the property had been destroyed in their possession, as to claim a similar exemption in this case.
Hunt, for the motion.
The decree is affirmed.
Johnson, Dunkin and Johnston, Ch., concurred.